AGNES M. BARKMAN, PROSECUTOR, v. CITY OF HACKEN-
SACK, HACKENSACK IMPROVEMENT COMMISSION
AND WILLIAM SCHAAF, CLERK, RESPONDENTS.

ORITANI FIELD CLUB, PROSECUTOR, v. CITY OF HACK-
ENSACK, HACKENSACK IMPROVEMENT COMMISSION
AND WILLIAM SCHAAF, CLERK, RESPONDENTS.

Argued October 3, 1934—Decided March 25, 1935.

Before Justices LLOYD, CASE and DONGES.

For the prosecutors, *Warren Dixon, Jr.*

For the respondents, *Donald W. Waesche.*

LLOYD, J. Assessments against the properties here involved
were set aside by this court on the 28th day of May last,
whereupon on the 19th of June following rules were
granted at the instance of the city of Hackensack to show
cause why the Supreme Court should not "ascertain and
determine for what sum said properties should be assessed,
and by order or decree fix the amount thereof."

While counsel for the owners in their brief called atten-
tion to the legal status of the application, and therein argued
the validity of assessment by the court at the hearing on the
rule, it was stipulated that the court make the assessments,
and that the parties be concluded by the disposition the
court should make of the questions involved. Under this

stipulation there is but one problem before us, viz: the benefits the respective properties received from the improvements involved, and the conclusiveness of our finding makes it all the more imperative that exceptional care be exercised in determining what the assessments shall be.

The ordinance under which the assessments are asked is one providing for the extension of Berry street in the city of Hackensack providing for the acquisition of the necessary land and for the payment of the cost by assessment thereof as a local improvement on the properties benefited thereby.

The total cost of the improvement is $289,772.53. The assessment on the Oritani Field Club property is $23,221.65, and on the Barkman property $3,740. These, as already stated, were set aside and the making of a proper assessment, if any, in each case is now committed to this court.

Taking up first the Field Club benefits: Berry street, before the opening, existed as a public highway in a southerly direction as far as State street. The extension carried it irregularly an additional two blocks, through Main street, the principal business highway of the city, crossing at approximately right angles, to River street. The Field Club property occupies the easterly part of the square lying between Main street and River street and between Berry street as newly opened and Camden street, a highway on its southerly side. It has a frontage on River street of four hundred and thirty-seven feet, on Camden street of two hundred and twenty-five feet, and two hundred and fourteen feet on Berry street as now opened.

Our examination of the evidence produced by the respective parties convinces us that the assessment of $23,221.65 (set aside by this court) was greatly in excess of any possible benefits derived from the opening of Berry street. The property was a considerable one and seems to have been used by the Field Club as a tennis court and for other sports. It already had a frontage on River street, recently opened, and had access through that highway, Camden street and other streets to Main street, already described as the principal business street of the city. It is true it is given on

its northerly side a new street frontage. When and to what extent this frontage may be utilized for the erection of stores or other improvements and what their promise of successful operation may be in view of the established business character of Main street, is problematical. It is subject of course to the street improvements and its fair share of other costs.

On the other hand it cannot be denied that there is a substantial benefit to the property by this opening. It does obtain the added frontage, conjectural in value as that may be. It also acquires a readier access to the main highway of the city inasmuch as Camden street on the southerly end of the property is a two-way street only in part.

The estimated value of benefits as given by the several witnesses called by the parties ranged all the way from approximately $5,000 to $27,000 and it is significant that the figures given by one of the city witnesses is substantially the amount upon which the assessment of the commissioners was made.

Taking into consideration all the proofs, we conclude that an assessment of $13,000 would amply compensate for all of the benefits derived from the opening.

Assessment against this property will be awarded in the sum of $13,000.

In No. 222, the Barkman property: The lot, on which is erected a frame dwelling, is located on State street, a leading highway of the city, and has a frontage of forty-four feet; a depth of one hundred and sixty-three feet. It adjoins another frame dwelling located on a lot extending fifty-one feet to the corner of the new Berry street. The benefits from the opening are variously estimated by the experts from nothing up to approximately $4,000.

The general benefits resulting from the opening are not assessable. It is only those which are special and peculiar to the individual property. *Kellogg* v. *Elizabeth,* 40 *N. J. L.* 274, and these must be present and not of the speculative type. *Ibid.* To reach any such result as the higher figure it was necessary to introduce the speculative conjecture that the corner property next door might some day desire ad-

ditional ground on the rear to utilize its own rear, and this it could obtain from the Barkman lot. We think such a basis untenable and any estimate predicated thereon unsound.

Nevertheless there is a special benefit to this property in the opening of the new street giving it proximity to a nearby corner and readier access to the leading highway of the city.

The benefits peculiar and special we think do not exceed $1,000 and for this amount an assessment will be awarded.